This is an application to distribute the personal property of Sarah J. Bradley, who died intestate on February 23d 1927, leaving an estate of about $24,000. Complainant insists that he is the only child of Mrs. Bradley and as such, is sole heir and next of kin. The defendants are nieces, nephews, grandnieces and grand nephews. Their relationship to the decedent is not disputed.
Complainant's relationship is challenged, it being asserted that he was not of the blood of decedent, nor legally adopted by her. Complainant has the burden of establishing his claim. Has he sustained it?
Mrs. Bradley was married to James Bradley at St. Patrick's Cathedral in Newark on January 1st, 1873. Two children were born of the marriage, Edward on November *Page 177 
30th, 1873, and Charlotte on January 12th, 1876. The record of their baptisms at the cathedral was produced, and the record of their births from the city clerk's office. The boy died November 17th, 1880, and the girl November 21st, 1880, as the records disclose. A memorial card giving dates of their death was found among Mrs. Bradley's effects which reads: "In memory of Edward, the only son, and Charlotte, the only daughter of James J. and Sarah J. Bradley."
Both these children died while their parents were living in Newark. The Bradleys moved to Harrison in 1881. Complainant says he was born in Harrison. At first he fixed the year as 1877 and then as 1879. If he were the Bradley's true son, it is highly improbable that he was born in Harrison because the Bradleys did not go there until 1881. There is no record of his birth either in Newark or Harrison although records of the births and deaths of the other two children are available. There is, it is true, an insurance policy in which Mrs. Bradley states she is his mother; also, a confirmation record from the Holy Cross Church, Harrison, but in this record there is nothing indicating the names of the parents. There are no family records showing that complainant is the son of decedent.
His claim rests on his own assertion in the first instance. The corroboration consists of the insurance policy above mentioned; and a letter to him from Mrs. Bradley signed "Mother." The Prudential policy gives the complainant's year of birth as 1877. At that time the Bradleys were living in Newark. They did not move to Harrison until 1881. At the time of the death of the two admitted children in 1880, Mrs. Frances Cook, a witness for complainant, was living with the Bradleys. If complainant was born in 1877 as appears most probable or in 1879 as he says, he would undoubtedly have been living with his parents. Mrs. Cook does not say a word about any other child at that time. She was sent away from the Bradley's home because the two admitted children had diphtheria; came back later and then went to live in Paterson. She was about twelve years old at that time. If *Page 178 
there had been another child with the Bradleys then it seems to me Mrs. Cook would have mentioned the fact in her testimony. She, however, specifically states that the first time she learned about "Dick," the complainant, was when she went to visit Mrs. Bradley in Harrison. This was probably in 1882, although it may have been in 1881, the year the Bradleys moved there. Mrs. Bradley on that occasion said: "Now, Frances, I have a — I got a little boy, and she says he is asleep and I would like to let you see him only I don't want to wake him up." Witness did not see the boy until three or four years afterwards. There is no admission here that the child was of her own blood. Nor does it necessarily follow that because Mrs. Bradley signed the insurance paper and the letter as "Mother" that she meant to declare he was her own child by birth. They can be construed as readily to mean a reference to a child legally adopted or taken into the home without that formality. The same can be said of the testimony of the other witnesses for complainant who say they have known Dick from childhood; that he lived with the Bradleys until he was seventeen; frequently visited them thereafter and was introduced by them as their son. This testimony in itself were there nothing else would lead me to hesitate before depriving undisputed blood relations of their legal rights.
But in addition to this we have the testimony of Mrs. Catherine McGinley. Her first husband was a brother of Mrs. Bradley. She testifies that in 1881 she went with Mrs. Bradley to a Mrs. Fitzgerald on Mulberry street, Newark, and obtained a letter which enabled Mrs. Bradley to go to the Home for the Friendless and select a child. She went to the home with Mrs. Bradley and selected a boy about four or five years old, who was called Dickey Dennis. She and her husband saw this same child on the following Saturday night at Mrs. Bradley's home in Harrison. A week later the same child was brought by the Bradleys to her home in Newark.
This witness is an old woman but her testimony was clear and distinct and not materially shaken on cross-examination. It was in the possession of counsel for complainant in affidavit form for almost a year before the case was heard. No attempt *Page 179 
was made to rebut it. It is elaborate and circumstantial in its detail but the summary I have made of it is sufficient for the purposes of this opinion. I realized at the hearing that Mrs. McGinley's children would come into a large part of the inheritance if complainant's case failed and therefore to give him every opportunity to combat it, I adjourned the case. This he has been unable to do. The records of the Home for the Friendless were investigated at my suggestion but they go no further back than 1888.
I cannot therefore overlook this undisputed evidence, and, I think its acceptance clears up the situation and explains the other testimony. I believe that Mrs. Bradley was grief-stricken at the deaths of her two own children which occurred within a week of one another. She desired the companionship of a child and procured one from the Home for the Friendless. The evidence shows that her mother had done the same thing in the case of the witness Frances Cook. She never legally adopted the child or so I must assume for counsel admits that the records fail to disclose any adoption papers.
This theory explains the contrast between the accurate record of the births and deaths of the first two children, and the uncertainty as to complainant's birth. It explains the memorial card cherished by Mrs. Bradley until her death with the pictures of her dead babies which states they were the only son andonly daughter. It is not inconsistent with the fact that she appears on the insurance policy and letter as "mother" of complainant, nor with the fact that she brought him up until he was seventeen years old and held him out to friends and neighbors as her son.
I will advise a decree dismissing complainant's bill. *Page 180